IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS P. HIGGINS,<br>*Plaintiff*,<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br>*Defendants*. | :<br>:<br>:<br>:    CIVIL ACTION<br>:    NO. 18-2858<br>:<br>:<br>:<br>: |

JONES, II   J.                                                                                                    AUGUST 13, 2019

### MEMORANDUM

Plaintiff Thomas P. Higgins ("Plaintiff") brings the above-captioned action under 42 U.S.C. § 1981 against Defendants City of Philadelphia, Lloyd Ayers, and Jeremiah Laster (collectively, the "Defendants") for his alleged unlawful termination. Plaintiff claims Defendants disciplined him more severely than his similarly situated African-American colleagues because of his Caucasian race. Pending before the Court is Defendants' Motion to Dismiss the Amended Complaint (ECF No. 8), Defendants' Motion to Strike Plaintiff's Second Amended Complaint (ECF No. 12), and Plaintiff's Cross-Motion for Leave *Nunc Pro Tunc* to File the Second Amended Complaint (ECF No. 15). For the reasons set forth below, the Court shall grant Defendants' motions and deny Plaintiff's motion.

### STANDARD OF REVIEW

**I.      MOTION TO GRANT LEAVE TO AMEND AND MOTION TO DISMISS**

After an amendment as of right, "a party may amend its [complaint] only with the opposing party's written consent or the court's leave [and] the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts will generally deny a request for

leave, however, when justified by grounds such as "undue delay, bad faith, dilatory motive, prejudice, [or] futility." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Courts have defined futility to "mean that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.*

When determining the futility of an amended complaint, courts apply the same standard of review applicable to a motion to dismiss pursuant to Rule 12(b)(6). *Id.* This standard requires a court to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation omitted). This inquiry requires courts to separate factual allegations from legal conclusions and determine whether the well-pled facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Where it is apparent from the face of a complaint or a proposed amendment that plaintiff has failed to comply with a governing statute of limitations, the complaint should be dismissed or leave to amend denied. *Datto v. Harrison*, 664 F. Supp. 2d 472, 482 (2009); s*ee also Alston v. Parker*, 363 F.3d 229, 236 (2004).

II. **MOTION TO STRIKE**

Under Rule 12(f) of the Federal Rules of Civil Procedure, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. "The purpose of a motion to strike is to clean up the pleadings, streamline

litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Resources, Corp.*, No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (internal quotations omitted). Courts have significant discretion when disposing of a motion to strike under Rule 12(f), however, "such motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Natale*, 2008 WL 2758238, at *14. At base, striking a pleading is appropriate "when required for the purposes of justice." *Id.*

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are presented in the light most favorable to Plaintiff. On August 27, 2012, Plaintiff "was served with a formal notice of dismissal" from his employment as a firefighter with the City of Philadelphia at Ladder 15/C ("Ladder 15") for his alleged involvement in a scheme for the theft of cable services from Comcast. (ECF Nos. 6, ¶¶ 10, 25; 11, ¶¶ 10, 25.)[1] Because of Plaintiff's "very limited connection to the [] scheme . . . many of the criminal charges against plaintiff were dropped in exchange for a guilty plea, community service and upon conclusion of the [ARD (Accelerated Rehabilitative Disposition)] program, expungement of the remaining charges and plea." (ECF Nos. 6 ¶¶ 27, 29; 11, ¶¶ 27, 29.) After successful completion of the ARD program, performance of community service, and payment of fines, Plaintiff was placed on probation. (ECF Nos. 11, ¶ 30; 6, ¶ 30.) Other than Plaintiff's guilty plea to reduced charges, he had an "impeccable work record and unblemished work history as a firefighter." (ECF Nos. 6, ¶ 33; 11, ¶ 33.)

---

[1] Given the pending Motion to Dismiss the Amended Complaint and Motion to Strike the Second Amended Compliant, the Court will cite to both documents.

At some point within the six months following Plaintiff's release from employment, he challenged his termination through his collective bargaining unit, IAFF Local 22. (ECF Nos. 6, ¶ 31; 11, ¶ 31). Plaintiff claimed his termination "was unjust under the collective bargaining unit and applicable department Disciplinary Code." (*Id*.)² On or about March 12, 2014, an arbitration was held denying Plaintiff's challenge. (ECF No. 11, ¶ 32; 6, ¶ 32.) During this process, his counsel "did not present disparate treatment evidence as a defense or mitigating factor [and] . . . [t]he question of race, and race comparators, did not come up." (ECF No. 6, ¶¶ 36-39.) Moreover, his counsel did not advise him on anti-discrimination laws, nor did Plaintiff seek any such advice from him. (ECF No. 6, ¶ 40.)

Four years later, on March 13, 2018, Plaintiff filed the underlying counseled complaint in the Philadelphia Court of Common Pleas alleging that he was unlawfully terminated on the basis of his race in violation of § 1981. (*See* ECF No. 11, ¶ 46.) Prior to filing the Complaint Plaintiff "had some idea that there was race discrimination in the Fire department, but . . . [a]ctive Fire Department members, who were also members of IAFF Local 22, refused to talk with plaintiff." (ECF No. 11, ¶¶ 42-43). Plaintiff believes this was "due to fear of retaliation within the department, and for fear of being charged under Disciplinary Code for associating with a firefighter terminated for committing a crime." (ECF No. 11, ¶ 43).

Defendants timely removed the case to this Court and filed a Motion to Dismiss under Rule 12(b)(6) ("First Motion to Dismiss"). (ECF Nos. 1, 2.) In response, Plaintiff filed the Amended Complaint ("FAC"). (ECF No. 6.) Following Plaintiff's filing of the FAC, the Court

---

² In the SAC, Plaintiff also alleged that he was more severely disciplined than other similarly situated African-American firefighter's at Ladder 15 who had committed equal or more serious misconduct during their employment. (ECF No. 11, ¶ 63-64.)

denied Defendants' First Motion to Dismiss as moot. (ECF No. 7.) Defendants then filed the pending Motion to Dismiss the FAC under Rule 12(b)(6) ("Second Motion to Dismiss"). (ECF No. 8.) Rather than file a response in opposition, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF No. 11.)[3] Plaintiff did so without Defendants' agreement or leave of this Court.

In response to the SAC, Defendants filed a Motion to Strike the SAC (ECF No. 12), which they later amended, (ECF No. 15), arguing that Rule 15(a)(2) mandates the SAC be stricken because Plaintiff did not have Defendants' consent or leave of this Court prior to filing. (ECF No. 15, p. 1.) Defendants further argue that even if this Court is nonetheless inclined to allow the second amendment, doing so would be futile because the statute of limitations has run on Plaintiff's claim. (*Id.*) Plaintiff contends that the doctrine of equitable tolling allows his claim to proceed despite the expiration of the statute of limitations. (ECF No. 18, pp. 4-5). Plaintiff alleges that to his "best recollection anti-discrimination notices and notices of rights under the anti-discrimination laws were not posted at Ladder 15 during the time [he] was stationed there." (ECF No. 6, ¶ 35.) According to Plaintiff, it was not until after March of 2018 when a current Fire Captain referred him to his current counsel that he had actual knowledge of his rights under the anti-discrimination laws. (ECF Nos. 6, ¶¶ 45-46; 11 ¶¶ 45-46.) As such, Plaintiff requests leave *nunc pro tunc* under Rule 15(a)(2) to file his SAC. (ECF Nos. 14, p. 6; 18, pp. 6-7.)

Thus, presently before the Court is Defendants' Second Motion to Dismiss (ECF No. 8), Defendants' Motion to Strike the SAC and Amended Motion to Strike the SAC, (ECF Nos. 12, 15), Plaintiff's Response in Opposition and Cross-Motion *Nunc Pro Tunc* for Leave to File the

---

[3] Under the SAC, which is presently the operative complaint, Plaintiff removed Mayor Michael A. Nutter as a defendant.

SAC (ECF No. 14), and Plaintiff's amendment thereto (ECF No. 18). The Court construed Defendants' Motion to Strike the SAC and Amended Motion to Strike the SAC together (collectively, the "Motion to Strike") and Plaintiff's Response in Opposition and Cross-Motion *Nunc Pro Tunc* for Leave to File the SAC and his amendment thereto together (collectively, "Opposition to Motion to Strike").

Upon consideration of the foregoing and for the reasons that follow, Defendants' Second Motion to Dismiss and Motion to Strike are granted because Plaintiff's claim of racial discrimination under § 1981 is time barred.

## DISCUSSION

Courts have construed § 1981's prohibition of nongovernmental discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," as supporting a claim for wrongful discrimination. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004). Although the statute does not contain a limitations period, the United States Supreme Court has applied the four-year statute of limitations period set forth in 28 U.S.C. § 1658 to wrongful termination claims, such as Plaintiff's, which arise under the 1991 amendment to § 1981. *Id*. The traditional purpose of any statute of limitations is "to protect defendants against stale or unduly delayed claims . . . facilitat[e] the administration of claims . . . and promot[e] judicial efficiency." *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 238-239 (3d Cir. 2014).

## I. THE COURT WILL GRANT DEFENDANT'S MOTION TO STRIKE

### A. Federal Rule of Civil Procedure 15(a)

As Defendants correctly argue, Plaintiff filed his SAC in contravention of Rule 15(a)(2)'s requirements that he either gain Defendants' agreement or leave of this Court before doing so. (ECF No. 12, ¶¶ 8-12.) However, though procedurally improper, the Court may nonetheless grant leave to amend a complaint when doing so is in the "interests of justice," *Natale*, 2008 WL 2758238, at *14, and doing so would not be futile. *Alston*, 363 F.3d at 236.

Construing all plausibly pled factual allegations in the SAC in Plaintiff's favor, it is "evident from the face of the pleadings" that Plaintiff has failed to comply with the governing limitations period. *Datto*, 664 F. Supp. 2d at 482. Plaintiffs' alleged discriminatory termination occurred on August 27, 2012 and Plaintiff did not file his § 1981 cause of action until March 13, 2018. (ECF No. 11, ¶ 46.) Plaintiff does not dispute these facts. Rather, conceding the point, Plaintiff argues that the limitations period has been equitably tolled. (ECF No. 18, pp. 2-6). Thus, only if Plaintiff demonstrates an entitlement to equitable tolling could the Court grant his *nunc pro tunc* request for leave in the interests of justice.

### B. Equitable Tolling

The doctrine of equitable tolling permits plaintiffs to present otherwise time-barred activity for the court's consideration in certain circumstances. *Patterson v. AFSCME #£2456*, 2009 WL 784235 (3d Cir. Mar. 26, 2009) (citing *Seitzinger v. Reading Hospital & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). These circumstances have included where (1) "a claimant received inadequate notice of [his] right to file suit"; (2) "a motion for appointment of counsel is pending"; (3) "the court has misled the plaintiff into believing that [he] had done everything required of [him]"; or (4) "plaintiff in some extraordinary way was prevented from asserting

[his] rights." *Patterson*, 2009 WL 784235, *2 (internal quotation omitted). Additionally, as to notice, in the Third Circuit, where an employer failed to satisfy a statutorily mandated notice requirement, the governing limitations period has been tolled until the aggrieved employee "seeks out an attorney or acquires actual knowledge of his rights under the [statute]." *Reilly v. Upper Darby Tp.*, 809 F.Supp.2d 368, 375 (E.D. Pa. 2011) (citing *Bonham v. Dresser Indus., Inc.*, 569 F.2d 187, 193 (3d Cir. 1977); *see also*, *Callowhill v. Allen v. Allen-Sherman-Hoff Co., Inc.*, 832 F.2d 269 (1987).

Absent intentional inducement or trickery by the defendant, however, federal courts invoke the doctrine of equitable tolling only in "rare situations where equitable tolling is demanded by sound legal principles as well as the interests of justice." *United States v. Midgley*, 142 F.3d 174, 179 (1998). These rare occurrences do not extend to situations that amount to "a garden variety claim of excusable neglect" by a plaintiff in filing their cause of action. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Consequently, and "[i]n addition, equitable tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007).

Plaintiff argues that equitable tolling is available here on two bases. First, Plaintiff contends that Defendants' alleged failure to post anti-discrimination notices at Plaintiff's work location tolled the four-year limitations period relevant to his § 1981 cause of action. (ECF No. 18, p. 4). Second, Plaintiff argues that the statute of limitations was tolled during the period Plaintiff challenged his termination through his collective bargaining unit because Plaintiff was unaware of his rights or limitations concerning relevant anti-discrimination laws. (ECF No. 11, ¶ 36.) Plaintiff's argument fails on both counts.

1.  Statutorily Mandated Anti-Discrimination Notices

Certain anti-discrimination statutes, including 42 U.S.C. § 1983, Title VII (42 U.S.C. § 2000e *et seq.*), and the Pennsylvania Human Relations Act (43 P.S. § 951 *et seq.*) ("PHRA") include specific notice mandates within the statute. However, as Defendants correctly note, and Plaintiff concedes (*see* ECF No. 18 p. 6), § 1981 contains no such notice requirement in its language. *See generally* § 1981. Plaintiff attempts to circumvent this fact by arguing that § 1981 is comprised of the same legal principles and analyzed in the same manner as other anti-discrimination laws with specific notice mandates such as § 1983, Title VII, or the PHRA, thus the interests of justice warrant their notice mandates be imputed to § 1981. (ECF No. 18, p. 3). Plaintiff further argues entitlement to the notice requirements in these other anti-discrimination statutes because his "employment discrimination claim could have been brought under § 1983 . . . Title VII . . . the PHRA . . . or all of them." (ECF No. 18, p. 2.)

The Court is unmoved by Plaintiff's arguments, finding them fallacious and conclusory at best. As an initial point, if Plaintiff could have brought his case under a statute that contained a specific notice mandate he should have done so. Secondly, Plaintiff's base argument that had Defendant posted the notices required by other anti-discrimination statutes he would have somehow become aware of his potential claim under § 1981 and subsequently filed a timely claim is too attenuated for the Court to follow. This Circuit tolls claims under the anti-discrimination statutes referenced by Plaintiff because employers were given notice, by statute, of their obligation to inform employees of their rights under the statute and failed to do so.

The more compelling argument, not addressed by Plaintiff, is that "Congress is presumed to incorporate equitable tolling into federal statutes of limitations because equitable tolling is part of the established backdrop of American law." *Lozano v. Montoya Alvarez,* 572 U.S. 1, 11

(2014). Thus, in light of the four-year statute of limitations created by 28 U.S.C. § 1658, there is an express legal basis to apply equitable tolling to Plaintiff's claims if warranted; though not automatically as Plaintiff would apparently like. However, Plaintiff fails to demonstrate an entitlement to equitable tolling.

As to the factors supporting a claim of equitable tolling, Plaintiff fails to plead any facts about Defendants actively misleading him, a pending motion for the appointment of counsel, or Plaintiff's assertion of his rights in the wrong forum. Rather, Plaintiff alleges that to his "best recollection anti-discrimination notices and notices of rights under the anti-discrimination laws were not posted at Ladder 15 during the time [he] was stationed there." (ECF No. 6, ¶ 35.) He further alleges that, his grievance process and arbitration counsel did not advise him on anti-discrimination laws, nor did Plaintiff seek any such advice from him. (ECF No. 6, ¶ 40.) Moreover, he suggests that his criminal counsel did not advise him of his any civil remedies that he may have. (ECF No. 11, ¶¶ 27-42). According to Plaintiff, it was not until March of 2018, when he obtained his present attorney, that he had actual knowledge of his rights under the anti-discrimination laws. (ECF Nos. 6, ¶ 46; 11, ¶ 46.)

Thus, though not expressly argued, the Court will assume that Plaintiff is arguing that the aggregate of his circumstances constitutes an extraordinary circumstance that prevented him from asserting his rights. However, the Court does not believe the circumstances alleged by plaintiff warrant the extension of this remedy that "must be scrupulously observed" and is "available only sparingly" to this situation. *Koller v. Abington Memorial Hospital*, 251 F. Supp.3d 861, 866 (E.D. Pa. 2017) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) (internal quotation omitted). As the Court previously explained, Defendants' alleged failure to post anti-discrimination notices required by other statutes does not evidence an

extraordinary circumstance entitling Plaintiff to equitable.  Additionally, to the extent Plaintiff is arguing that his criminal counsel and/or arbitration counsel's failure to tell him about his potential civil remedies warrants tolling, attorney negligence is not an "extraordinary circumstance" justifying equitable tolling of an express statutory limitations period – let alone an imputed one.  *See Holland v. Florida*, 560 U.S. 631, 659 (2010).

Moreover, the Court will not assume, where plaintiff has not pled plausibly, that he exercised reasonable diligence in determining his legal rights.  Plaintiff alleges that at some time prior to March 2018 when he retained his current counsel, he became aware of race discrimination within his former place of employment.  (ECF No. 11, ¶¶ 41-42).  Consequently, he claims that he attempted to speak to his former colleagues about his potential claims.  (ECF No. 11, ¶¶ 42-43).  However, this, in and of itself, does not constitute reasonable diligence.  Plaintiff curiously has failed to include the time period within which he had attempted to have these alleged conversations.  However, assuming they took place at some point prior to the expiration of the statute of limitations, these attempts without more are insufficient.  Plaintiff does not even minimally plead how these conversations would have led him to discover the existence of § 1981 and the Court has no reasonable basis to assume that they would.

### 2. Plaintiff's Challenge of his Termination Through His Collective Bargaining Unit

Finally, Plaintiff's argument that the limitations period should be tolled for the period he was challenging his termination with his collective bargaining unit is also without merit.  Case law is clear that "the pendency of a grievance, or some other method of collateral review of an

employment decision, does not toll the running of the limitations periods." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 (1980).

Accordingly, the Court finds Plaintiff's arguments for equitable tolling unavailing.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss the Amended Complaint and Motion to Strike the Second Amended Complaint. The Court will deny Plaintiffs' Motion for Leave to File the Second Amended Complaint *nunc pro tunc* and will dismiss this case with prejudice for failure to comply with the governing statute of limitations. An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II    J.